IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **GLORIA WILLCOX**, o/b/o **RYAN WILLCOX**, | Case No. 3:13-cv-02201-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **CAROLYN W. COLVIN**, Acting Commissioner of Social Security | |
| Defendant. | |

Merrill Schneider, SCHNEIDER, KERR & GIBNEY LAW OFFICES, P.O. Box 14490, Portland, OR 97293. Of Attorneys for Plaintiff.

S. Amanda Marshall, United States Attorney, and Ronald K. Silver, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97201-2902; Franco L. Becia, Special Assistant United States Attorney, OFFICE OF THE GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104-7075. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Gloria Willcox, on behalf of her son Ryan Willcox ("Plaintiff"), seeks judicial review of

the final decision of the Commissioner of Social Security ("Commissioner") denying his

application for Disability Insurance Benefits ("DIB") under Title II and Supplemental Security

Income ("SSI") under Title XVI of the Social Security Act. For the reasons stated below, the Commissioner's decision is AFFIRMED.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff, Ryan Willcox, was born on February 28, 1983. AR 18. From 2002 until January 2009, he worked primarily as a truck driver. AR 216-17. Plaintiff filed his applications on June 23, 2010, alleging disability as of January 13, 2009. AR 85-86. Plaintiff requested a hearing after the application was denied initially and upon reconsideration. Plaintiff died on October 6, 2011, and his father, John Willcox, became a substitute party. AR 152. After holding a hearing, an Administrative Law Judge ("ALJ") issued a decision on June 15, 2012, denying Plaintiff's applications. AR 11-19. The Appeals Council denied Plaintiff's request for review on October 17, 2013, making the ALJ's determination the final agency decision.  Plaintiff seeks judicial review of that determination.

### B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

> 1.  Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R.

PAGE 3 – OPINION AND ORDER

§§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.     Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.     Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.     Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.     Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also*

*Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The

Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the

Commissioner must show that the claimant can perform other work that exists in significant

numbers in the national economy, "taking into consideration the claimant's residual functional

capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966

(describing "work which exists in the national economy"). If the Commissioner fails to meet this

burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however,

the Commissioner proves that the claimant is able to perform other work existing in significant

numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54;

*Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

At step one of the sequential analysis, the ALJ found that Plaintiff had not engaged in

substantial gainful activity since January 13, 2009. AR 13. At step two, the ALJ determined that

Plaintiff had the following severe impairments: obesity with chronic pain, hypertension,

headaches, sleep apnea status post cholecystectomy, drug abuse, gastroesophageal reflux disease,

and scoliosis. *Id.*

At step three, the ALJ found that Plaintiff did not have an impairment or combination of

impairments that met or medically equaled the severity of listed impairments in 20 C.F.R.

Part 404, Subpart P, Appendix 1. AR 14. Next, the ALJ formulated Plaintiff's RFC, finding that

Plaintiff had the capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and

416.967(b), but with certain limitations. *Id.* Specifically, the ALJ found that Plaintiff could lift

and carry twenty pounds occasionally and ten pounds frequently, stand and walk for two hours

out of an eight-hour day, and sit for 6 hours out of an eight-hour day. AR 14-15. The ALJ further

PAGE 5 – OPINION AND ORDER

found that Plaintiff could not climb ladders, ropes, or scaffolds, but could occasionally climb

ramps and stairs and balance, stoop, kneel, crouch, and crawl. AR 15. The ALJ also found that

Plaintiff needed to avoid concentrated exposure to vibrations, fumes, odors, dusts, and gases, and

even moderate exposure to heights, hazards, and heavy equipment. *Id.*

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work.

AR 18. At step five, the ALJ determined that Plaintiff could perform other work that exists in

significant numbers in the national economy, including positions identified by a vocational

expert: animal shelter clerk, timekeeper, and dispatcher. AR 18-19. Accordingly, the ALJ found

that Plaintiff was not disabled, as defined in the Social Security Act, from January 13, 2009,

through the date of his death.

## DISCUSSION

Plaintiff argues that the ALJ erred in three ways: (1) discrediting Plaintiff's testimony

about his symptoms and limitations; (2) discounting the lay witness testimony of Plaintiff's

parents; and (3) failing sufficiently to consider evidence of Plaintiff's death.

### A. Plaintiff's Credibility

Plaintiff argues that the ALJ failed to give clear and convincing reasons to discount the

credibility of Plaintiff's disability allegations. There is a two-step process for evaluating the

credibility of a claimant's own testimony about the severity and limiting effect of the claimant's

symptoms. *Vasquez v. Astrue,* 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine

whether the claimant has presented objective medical evidence of an underlying impairment

which could reasonably be expected to produce the pain or other symptoms alleged."

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (citation and quotation marks

omitted). When doing so, the claimant "need not show that her impairment could reasonably be

expected to cause the severity of the symptom she has alleged; she need only show that it could

PAGE 6 – OPINION AND ORDER

reasonably have caused some degree of the symptom." *Smolen v. Chater,* 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, "if the claimant meets the first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc)).

In weighing the claimant's credibility, the ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and the observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

Further, an ALJ "may consider . . . ordinary techniques of credibility evaluation, such as the reputation for lying, prior inconsistent statements concerning the symptoms, . . . other testimony by the claimant that appears less than candid, [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at 1284. For instance, the ALJ may consider inconsistencies either within the claimant's testimony or between the testimony and the claimant's conduct. *Turner v. Comm'r of Soc.*

*Sec.*, 613 F.3d 1217, 1224 n.3 (9th Cir. 2010). Other valid considerations include "'unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment,'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen*, 80 F.3d at 1284), and "whether the claimant engages in daily activities inconsistent with the alleged symptoms," *Lingenfelter*, 504 F.3d at 1040. The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197.

Plaintiff argues that the ALJ erroneously discredited Plaintiff "based primarily on 'drug-seeking behavior'" after Mrs. Willcox testified that Plaintiff had an "earnest need" for pain medication and was hesitant to go to the emergency room.[1] An ALJ may, however, consider evidence of drug-seeking behavior to conclude that a claimant is not credible. *See Massey v. Comm'r Soc. Sec. Admin.*, 400 F. App'x 192, 194 (9th Cir. 2010) (unreported) (holding that the ALJ's finding that claimant engaged in drug-seeking behavior was "a clear and convincing reason for disregarding [defendant's] testimony); *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001) ("ALJ properly concluded that claimant's complaints are not credible" in light of evidence of drug-seeking behavior).

Here, the ALJ carefully reviewed Plaintiff's history of frequent trips to the emergency room seeking narcotic pain medication. In a March 2009 visit to the emergency room, Plaintiff's physician stated that Plaintiff "wants parenteral narcotics [u]ntil he is snowed." AR 16, 524. That physician also stated that he was "suspicious that [Plaintiff] is using [medication] for secondary

---

[1] In addressing the ALJ's discounting of Plaintiff's disability allegations, Plaintiff also argues that the lay witness testimony of Plaintiff's mother and father "corroborated Plaintiff's disability allegations altogether and undermined the ALJ's doubt concerning them." Plaintiff also argues that the ALJ "unduly relied" on evidence from 2009 and 2010 in discrediting Plaintiff, rather than evidence of Plaintiff's death in 2011. These arguments are addressed separately below.

gain." AR 525. Another physician noted that he would no longer "give narcotic pain medication to this patient unless I can find a medical reason in the future to do so." AR 708. During a July 2009 emergency room visit, Plaintiff left against medical advice when a physician refused to give him narcotics. AR 16, 708. In October and November of 2009, a physician noted that Plaintiff was using more pain medication than prescribed by his primary care physician and was getting additional medication from other doctors, leading to suspicion he was selling or overusing the drugs. AR 16. In a March 2010 emergency room visit, a physician expressed concern that Plaintiff was specifically asking for intravenous Dilaudid and was taking regular doses of Dilaudid for headaches. AR 16, 1017. The emergency room physician noted that Plaintiff "may be developing drug seeking behaviors and narcotic dependence." AR 16, 1017-18. A social worker noted that Plaintiff was "either . . . selling his narcotics or over using them out of addiction or financial needs." AR 853.

The ALJ's discounting of Plaintiff's disability allegations due to "extensive evidence of drug-seeking behavior," AR 15, is a reasonable interpretation of the medical record. Accordingly, the Court defers to the ALJ's interpretation of the evidence on this issue. *See Burch v. Barnhart*, 400 F.3d at 679 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."). Plaintiff's alternative interpretation of the evidence is insufficient to overturn the ALJ's findings. *See Tommasetti*, 533 F.3d at 1039.

Moreover, Plaintiff has challenged only one of the multiple reasons given by the ALJ for discrediting Plaintiff's disability allegations. In addition to discrediting Plaintiff's testimony based upon Plaintiff's drug-seeking behavior, the ALJ provided additional reasons for discrediting Plaintiff's testimony, including "minimal examination findings" corroborating

Plaintiff's pain allegations, inconsistency with objective evidence, the effectiveness of existing medical treatment, and Plaintiff's inconsistent statements. AR 15-16. Because the ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld, *see Batson*, 359 F.3d at 1197, there is no basis for overturning the ALJ's decision discrediting Plaintiff's disability allegations.

## B.  Lay Witness Testimony

Plaintiff argues that the ALJ erred in evaluating and rejecting the testimony of Plaintiff's parents, Gloria and John Willcox. An ALJ has a duty to consider lay witness testimony. 20 C.F.R. § 404.1513(d); *Molina v. Astrue*, 674 F.3d at 1104, 1115 (9th Cir. 2012) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)); *Dodrill*, 12 F.3d at 919. The ALJ must provide germane reasons for rejecting such testimony. *Molina*, 674 F.3d at 1114 (citing *Dodrill*, 12 F.3d at 919). An inconsistency between the medical evidence and a lay witness's testimony is a germane reason to discredit such testimony. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). The ALJ is not required to address each lay witness "on an individualized witness-by-witness basis" and, having properly found claimant not credible, may reject similar lay testimony on the same grounds. *Molina*, 674 F.3d at 1114-15 (citing *Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009)).

### 1.  Gloria Willcox

Plaintiff argues that the ALJ erred in two ways by rejecting Mrs. Willcox's testimony: (1) failing to discuss Mrs. Willcox's testimony regarding Plaintiff's genuine need for pain medication; and (2) failing to explain exactly which parts of Mrs. Willcox's testimony were credible and which were not.

In discussing Plaintiff's physical ailments, Mrs. Willcox testified that Plaintiff weighed more than 600 pounds before his death and that he had stomach pain, frequent headaches,

PAGE 10 – OPINION AND ORDER

difficulty breathing, and ankle and leg injuries. AR 44-45. She testified that Plaintiff was tired all the time and could only sleep for two to four hours at a time. AR 49. Mrs. Willcox also stated that she had accompanied Plaintiff on some of his trips to the emergency room. AR 45-46. Mrs. Willcox said she believed that Plaintiff hated going to the emergency room, that Plaintiff's need for pain medication was genuine, and that emergency room staff would treat Plaintiff "as if he were subhuman and a street drug addict." AR 46. Plaintiff contends that this testimony was "highly probative" and that the ALJ was not permitted to overlook it.

Contrary to Plaintiff's assertion, however, the ALJ did address Mrs. Willcox's testimony, but found that "[t]he allegations of Mrs. Willcox are not fully credible in light of the treatment record." AR 17. The ALJ discussed the relevant medical evidence and found that it was inconsistent with the severity of pain Plaintiff alleged. AR 16. Regarding Plaintiff's complaint of debilitating headaches, the ALJ noted that two CT scans in May and December of 2009 demonstrated normal findings. AR 16, 654, 1086. Similarly, electroencephalographic ("EEG") studies in June 2009 showed no abnormal findings. AR 16, 649. Regarding Plaintiff's allegations of abdominal pain, the ALJ noted that Plaintiff's medical history showed frequent visits to the emergency room, but examinations and medical tests revealed only mild symptoms or unremarkable findings. AR 16. Given the contrary medical evidence, the ALJ properly rejected Mrs. Willcox's lay witness testimony regarding Plaintiff's pain allegations. *See Bayliss*, 427 F.3d at 1218 ("An ALJ need only give germane reasons for discrediting the testimony of lay witnesses. Inconsistency with medical evidence is one such reason.") (citation omitted).

Moreover, an ALJ may reject a lay witness's statement for similar reasons she rejected a plaintiff's credibility if those reasons were sufficient and if the lay witness's statements were similar to the plaintiff's complaints. *See Valentine*, 574 F.3d at 694 ("In light of our conclusion

PAGE 11 – OPINION AND ORDER

that the ALJ provided clear and convincing reasons for rejecting [defendant's] own subjective complaints, and because [defendant's wife's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony."). As explained above, the ALJ properly discredited Plaintiff's testimony. Accordingly, because Mrs. Willcox's testimony was similar to Plaintiff's, the ALJ also gave germane reasons for rejecting Mrs. Willcox's testimony regarding Plaintiff's pain allegations.

Plaintiff next argues that the ALJ erred by failing to "explain what part of [Mrs. Willcox's] testimony was credible and what part was not." This argument is without merit. After discussing the medical evidence at length, the ALJ found that the assertions by Mrs. Willcox are not fully credible in light of the treatment record. AR 17. The ALJ also discussed Mrs. Willcox's description of Plaintiff's limitations regarding Plaintiff's pain, inability to perform daily activities, and problems with concentration and getting along with others. *Id.* The ALJ, however, had already discounted these alleged limitations in addressing Plaintiff's credibility. AR 16-17. The Court may draw reasonable inferences from the ALJ's decision "if those inferences are there to be drawn," *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989), and in this instance the ALJ discussed the relevant evidence at length and provided a clear basis for a negative credibility finding. The ALJ was not required to list every statement made by a witness and explain his reasoning for rejecting each one. Accordingly, the ALJ properly discredited Mrs. Willcox's testimony and did not commit legal error.

### 2. John Willcox

Plaintiff similarly argues that the ALJ erred by "failing to explain the disposition of Mr. Willcox's material testimony." Contrary to Plaintiff's suggestion, the ALJ did sufficiently address Mr. Willcox's testimony and explained that "[t]he allegations of Mr. Willcox are not fully credible in light of the treatment record." AR 17. Moreover, where an ALJ has provided

PAGE 12 – OPINION AND ORDER

clear and convincing reasons for rejecting a plaintiff's testimony, those same reasons are sufficient to reject a lay witness's similar testimony. *See Valentine*, 574 F.3d at 694. Similarly, where an ALJ provides germane reasons for discounting one lay witness's testimony, the ALJ also properly discounts similar testimony provided by other lay witnesses. *See Molina*, 674 F.3d at 1114 ("We have not, however, required the ALJ to discuss every witness's testimony on a[n] individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by different witnesses."). As discussed above, the ALJ provided clear and convincing reasons for discounting Plaintiff's testimony and germane reasons for discounting Mrs. Willcox's lay witness testimony. Accordingly, by referring to inconsistencies with the objective medical evidence and based upon the reasons given for rejecting other witnesses, the ALJ properly discounted Mr. Willcox's statement regarding nearly identical symptoms.

## C.  Plaintiff's Death

Plaintiff argues that the ALJ "failed to consider the import of Plaintiff's death in determining whether Plaintiff was disabled." Specifically, Plaintiff argues that evidence of Plaintiff's death was "clearly relevant to the question at step three of the [sequential] analysis whether Plaintiff had an impairment or combination of impairments that met or medically equaled a listed impairment." Plaintiff also argues that evidence of Plaintiff's death "clearly was relevant to his level of functioning and the RFC assessment before his death." In sum, Plaintiff claims that evidence of Plaintiff's death "strengthened Plaintiff's claim overall" and "undermined the ALJ's evaluation of the evidence and determination that Plaintiff lacked credibility."

As an initial matter, although Plaintiff's opening brief repeatedly states that Plaintiff died of "morbid obesity, hypertension, and obstructive sleep apnea," Plaintiff's death certificate lists

PAGE 13 – OPINION AND ORDER

the cause of death as "probable atherosclerotic heart disease." AR 214. A further section of the

death certificate labeled "other significant conditions contributing to death" does, however, list

morbid obesity, hypertension, and obstructive sleep apnea. *Id.* Thus, based on the Plaintiff's

death certificate, morbid obesity, hypertension, and obstructive sleep apnea are more accurately

described as contributing factors.

Plaintiff provides no other medical or testimonial evidence related to the cause of

Plaintiff's death. Plaintiff also provides no explanation or argument as to how the ALJ's findings

at step three of the sequential analysis or his determination of Plaintiff's RFC are erroneous in

light of Plaintiff's death. Moreover, Plaintiff cites no legal authority for the proposition that a

claimant's death is relevant to a listing analysis or in determining a claimant's RFC. In short,

Plaintiff provides the Court with no basis to overturn the ALJ's determination that Plaintiff was

not disabled under the requirements of the Social Security Act.

Plaintiff's assertion that his death was "clearly relevant" to the ALJ's disability

determination appears to rest on an incorrect interpretation of the Social Security Act's definition

of disability. Plaintiff asserts that "[d]isability is a severe physical or mental impairment that is

expected to either result in death or to last at least 12 months." Plaintiff's definition is

incomplete. To establish a claimant's eligibility for disability benefits under the Social Security

Act, it must be shown both that: (a) the claimant suffers from a medically determinable physical

or mental impairment that can be expected to result in death or that has lasted or can be expected

to last for a continuous period of not less than twelve months; and (b) the impairment renders the

claimant incapable of performing the work that the claimant previously performed and incapable

of performing any other substantial gainful employment that exists in the national economy. *See*

42 U.S.C. § 423(d)(2)(A)[2]. Only if a claimant meets both requirements is he or she "disabled." *Tackett*, 180 F.3d at 1098.

Here, the ALJ properly considered all of the available medical evidence and determined that Plaintiff retained the ability to perform a reduced range of light work. AR 14-15. With the assistance of a vocational expert, the ALJ determined that Plaintiff could have performed jobs existing in substantial numbers in the national economy. AR 18-19. Plaintiff fails to identify any error in this determination. Plaintiff's death is a tragedy. The fact that Plaintiff is deceased, however, is not a basis for overturning an ALJ's decision that is supported by substantial evidence in the record.

## CONCLUSION

The Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED**.

DATED this 24th day of November, 2014.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge

---

[2] The relevant text of 42 U.S.C. § 423(d)(2)(A) is as follows:

> An individual shall be determined to be under a disability *only* if his physical or mental impairment or impairments are of such severity that he is *not only* unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (emphasis added).

PAGE 15 – OPINION AND ORDER